UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KELTON SPANN O/B/O GILDA SPANN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2780** |
| **BOGALUSA CITY POLICE DEPARTMENT AND CHIEF KENDALL BULLEN** | **SECTION "B"(3)** |

## ORDER AND REASONS

Before the Court is defendants Bogalusa City Police Department and Chief Kendall Bullen's motion for summary judgment (Rec. Doc. 18). Plaintiff has not filed an opposition or response to the motion. For the reasons discussed below,

**IT IS ORDERED** that the motion for summary judgment is granted as unopposed and, moreover, because it has merit.

### I. FACTS AND PROCEDURAL HISTORY

On September 3, 2020, plaintiff Kelton Spann filed a civil action for damages in the 22nd Judicial District Court for Washington Parish, Louisiana alleging that defendants Chief Bullen and the Bogalusa City Police Department failed to provide him with an administrative hearing pursuant to La. Rev. Stat. Ann. § 32:1727 after his mother Gilda Spann's car was towed by Bogalusa city police. Rec. Doc. 1-1 at 3. Broadly construing his pro se complaint,[1] Spann alleges that he was stopped for traffic violations by Bogalusa city police officers on May 22, 2020. Rec. Doc. 1-1, at 1-3; Rec. Doc. 18-1, at 2 (providing the date of the

---

[1] The court must "'liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel ...'" *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011); *Moore v. McDonald*, 30 F. 3d 616, 620 (5th Cir. 1994).

1

traffic stop). Spann alleges that he was unaware that he was being followed by police when he made a u-turn on North Avenue in Bogalusa. Rec. Doc. 1-1, at 3. He turned into the driveway of his property at 908 Dan Street when officers ordered him out of the vehicle. *Id.*, at 3-4. As a result of the stop, a police officer had the car towed and impounded despite proof that the car was insured. *Id.* at 1, 4. Spann claims that the officer acted with discriminatory motive or reasons in violation of his state and federal constitutional rights. *Id.* at 4.

He also claims that that the officer had no legal justification to authorize the tow and was intentionally motivated by discrimination. *Id.* He further claims that La. Rev. Stat. Ann. § 32:392.1 instructs that the car was not to be impounded. Instead, the officer was to issue a notice of non-compliance with La. Rev. Stat. Ann. § 32:863.1, a citation or violation ticket, and/or remove the vehicle's license plate. *Id.*

He further alleges that, after receiving a hearing notice from the tow company on May 30, 2021, he wrote Chief Bullen requesting an administrative hearing pursuant to § 32:1727. *Id.* at 1. When no response was received, Spann engaged a paralegal service to send a demand letter dated August 3, 2020, to Chief Bullen requesting the hearing. *Id.* at 3. Spann claims that, after receiving the demand letter, Chief Bullen stated during a telephone call that his office does not provide the administrative hearings required by the statute. *Id.*

On October 9, 2020, defendants removed the matter to this Court based on the plaintiff's allegations that defendants violated his rights under the U.S. Constitution. Rec. Doc. 10 at 1; *see* Rec. Doc. 1.

Defendants asserted that federal jurisdiction exists pursuant to 28 U.S.C. § 1331 as the plaintiff's federal claims "raise substantial federal questions which must be interpreted using federal common law." Rec. Doc. 1 at 2.

On April 8, 2021, Spann filed an amended and supplemental complaint, which he claims he presented to the state courts for filing before removal but it was never filed by the state court. Rec. Doc. 21. Spann asserted his claims under 42 U.S.C. § 1983 for violation of his First and Fourth Amendment rights as applied to the States by the Fourteenth Amendment to the U.S. Constitution. *Id*. at 1. He sued the City of Bogalusa Police Department and Chief Kendall Bullen for the malicious and unlawful violation of his constitutional right to redress his grievances and free speech and his statutory rights under Louisiana law.

He clarified his prior claim that, on November 4, 2020, Bogalusa city police officers went to his mother Gilda Spann's residence to retaliate against plaintiff and for him to dismiss his state court lawsuit. *Id*., ¶¶2-5, at 2-3. He claims that they entered the property "with an intimidating and bullying conduct." *Id*., ¶3, at 2. Spann claims that the police were not called to the house, and instead entered the property to harass and intimidate him as his mother sat in a wheelchair at the side door under the carport. *Id*., ¶4-5, at 3. He claims that the four officers and one lieutenant wore black masks and gloves in an intimidating manner. *Id*. He further claims that the officers were disrespectful in their tone when answering his mother's questions. *Id*., ¶7, at 3.

3

Spann also avers that the defendants' written and unwritten, formal and informal policies, practices, and procedures encouraged and enabled the officers to conspire and violate his constitutional rights to seek redress for his grievances and exercise of free speech by filing his lawsuit. *Id.*, ¶¶9-11, at 4.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F. 3d 283, 285 (5th Cir. 2006).

Courts are discouraged from automatically granting a motion for summary judgment simply because it is unopposed. *Skinner v. Schlumberger Technology Corp.*, No. 13-03146, 2014 WL 12543925, at *1 (W.D. La. Nov. 21, 2014). Thus, the movant is still required to establish the absence of a genuine issue of material fact, and if he fails to do so, the court must deny the motion, even if there was no response. *Id.* (citing *Hetzel v. Bethlehem Steel Corp.*, 50 F. 3d 360, 362 n.3 (5th Cir. 1995)).

Nevertheless, in the absence of an opposition to summary judgment, the court may deem the movant's statement of facts as undisputed. *Loeber v. Bay Tankers, Inc.*, 924 F. 2d 1340, 1345 (5th Cir. 1991) (per curiam), *cert. denied*, 502 U.S. 819 (1991); *see also* Fed. R. Civ. P. 56(e). Furthermore, "the court has no obligation to sift through the record in search of evidence to support the nonmovant's opposition to the motion for summary judgment." *Morgan v. Fed. Exp. Corp.*, 114 F. Supp. 3d 434, 437 (5th Cir. 2015)(internal quotes omitted).

### B. Violation of La. Rev. Stat. Ann. § 32:1727 and Procedural Due Process Claims

The Due Process Clause of the Fourteenth Amendment declares that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const, Amend. XIV. To state a § 1983 claim for a due process violation, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Gentilello v. Rege*, 627 F. 3d 540, 544 (5th Cir. 2010) (citation omitted). The Supreme Court has emphasized that "[t]he touchstone of due process is protection of the individual against arbitrary action of government ..." which includes both a substantive due process guarantee against the arbitrary and oppressive exercise of government power, and a procedural due process guarantee protecting against arbitrary takings. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (citations omitted).

Here, Spann asserts that he was denied the procedural protections provided in La. Rev. Stat. Ann. § 32:1727, which provides for post-impoundment notice and an opportunity for an administrative hearing at which *the owner* may demonstrate valid proof of insurance. *See also*, La.

5

Rev. Stat. Ann. § 32:863.1(C)(1)-(6). Spann, however, has not established that he had a protected property or other interest in his mother's car.[2]

Spann complains that his mother's car was towed without proper notice or an opportunity to challenge the tow in a post-deprivation hearing. As specifically addressed by Spann's pleadings, Louisiana law provides that *the owner* receive post-impoundment notice and an opportunity for an administrative hearing on review of whether the vehicle was covered by insurance. La. Rev. Stat. Ann. § 32:863.1(C)(1)-(6) and La. Rev. Stat. Ann. § 32:1727.11. This right is given specifically to *the owner* of the vehicle. Spann, however, was not the owner of the vehicle. The car instead belonged to Spann's mother, Glenda Spann, who is not a party to this litigation (despite the caption on Spann's *pro se* complaints). Spann, therefore, had no discernable protected right to post-deprivation notice or a hearing under Louisiana law.

Furthermore, Spann has not demonstrated that his mother sought and was denied relief under the Louisiana statute. The unchallenged summary judgment evidence indicates that "Gilda Spann did not request an administrative hearing to determine why her car was towed and subsequently held at Meas Towing and Storage." Rec. Doc. 18-4 (Affidavit of Chief Bullen). We also note that the documentation attached to Spann's original state court complaint reflects that the § 32:1727 notice

---

[2] The Supreme Court has not recognized a protected right to intrastate travel, or travel within a city like at issue here. *See Dickerson v. City of Gretna*, No. 05-6667, 2007 WL 1098787, at *3 (E.D. La. Mar. 30, 2007) (as amended Apr. 11, 2007).

of right to a hearing is imprinted on the towing notice addressed to Gilda F. Spann. Rec. Doc. 1-1, at 7.

As established by the defendants' summary judgment evidence, at the time of the stop, Spann was unable to provide proof of current insurance at the scene of the stop. Louisiana law requires a police officer to determine whether proof of insurance is established before the vehicle may be towed. See La. Rev. Stat. Ann. § 32:863.1(C)(1)(a). Because the vehicle was lawfully towed from the scene, as to Spann, the towing and ultimate disposition of the vehicle does not constitute a denial of procedural due process or an unlawful taking under the Fourteenth Amendment. *Dudley v. Kansas City Police Dep't*, No. 13-0918, 2014 WL 1775959, at *3 (W.D. Mo. May 5, 2014) (citing *Bennis v. Michigan*, 516 U.S. 442, 452 (1996)).

Spann also has not demonstrated that the towing of the vehicle from the scene of his arrest was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Woodard v. Andrus*, 649 F. Supp. 2d 496, 504 (W.D.La.2009) (citations omitted). Spann led the police on a chase through the City of Bogalusa during which he committed various traffic infractions. Once he was stopped, it was established that he had no proof of insurance, and both he and his passenger had outstanding arrest warrants. Spann also parked the car in an abandoned property necessitating its removal. Spann has not demonstrated that the arresting officers' actions were inappropriate or transgressed constitutional norms.

In sum, the court finds that Spann was not deprived of a protected right in violation of the due process clause or Louisiana law when his

7

mother's car was towed from the scene of his arrest.  In addition, Spann was not the owner of the car, and therefore, was not deprived of a protected federal or state right when he did not receive post-deprivation notice or an administrative hearing under La. Rev. Stat. Ann. § 32:1727.  The defendants' motion for summary judgment is granted, and Spann's federal and state law claims related to the towing of his mother's vehicle are dismissed.

### C. *Monell* Claim

Municipalities, like the City of Bogalusa through its police department and its employees sued in an official capacity,[3] may be held liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights.  *Monell*, 436 U.S. at 690-91; *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F. 3d 221, 224 (5th Cir. 2008).  "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F. 3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F. 3d 536, 541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F. 3d 734, 748 (5th Cir. 2005).  Official municipal policy includes the decisions of its lawmakers, the acts of its policymaking officials, and practices by its employees so persistent and widespread as to practically have the force of law.  *Monell*, 436 U.S. at 691-95.

---

[3] The Court will assume for the sake of this motion that Spann intended to name Chief Bullen in both his individual and official capacities.

As discussed above, Spann has not established that there has been a violation of a constitutional right in connection with the failure to provide him, a mere driver, with notice and an administrative hearing under § 32:1727. Spann has only generally alleged in his complaint that the City of Bogalusa Police Department, and Chief Bullen, failed to follow requirements of this statute and other state laws related to proof of insurance. However, Spann has not established that any of the laws he invokes offered protections to him as a driver rather than the owner of the car. He also has not alleged more than conclusory statements that there is a city or police department policy to deprive citizens of the rights under the statute. He does not identify a specific official policy adopted and promulgated by Bogalusa lawmaking officers or by a city official, including Chief Bullen, who had been delegated such policy-making authority, that caused a violation of his constitutional rights as required by *Monell*, 436 U.S. at 691-95. He makes only vague and conclusory allegations that the City of Bogalusa Police Department and Chief Bullen knowingly and actively caused the violation of his due process rights. Spann effectively relies on a single incident and vague generalities to allege an official policy or custom. However, a single incident is insufficient to infer an official policy or custom. *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F. 3d 747, 753-54 (5th Cir. 2009) ("One incident of applying inapplicable statutes to the [plaintiffs] is, however, insufficient to demonstrate a custom. Again, [the plaintiffs] must show a 'persistent and widespread practice.'"); *Pineda v. City of Houston*, 291 F. 3d 325, 329 (5th Cir. 2002); *Piotrowski*, 237 F. 3d at 581.

Spann therefore has not sufficiently alleged an official policy or custom or that a policy or custom violated a constitutional right, both of which are necessary elements to support a claim of municipal liability under *Monell*. Accordingly, defendants motion is granted and Spann's § 1983 claims against the City of Bogalusa and Chief Bullen are dismissed with prejudice.

**D. False Arrest Claim**

In *Heck v. Humphrey*, the Supreme Court held that a civil tort action, including an action under 42 U.S.C. § 1983, is "not [an] appropriate vehicle[ ] for challenging the validity of outstanding criminal judgments." 512 U.S. 477, 486 (1994). *Heck* precludes an individual from maintaining a civil rights action for damages based on the legality of a prior criminal proceeding unless a state court or a federal habeas court has determined that the underlying conviction is in fact invalid. *See Id*. The critical inquiry is whether a judgment in favor of the plaintiff in the civil rights case would "necessarily imply the invalidity of his conviction or sentence." *Id*.; *Bush v. Strain*, 513 F. 3d 492, 497 (5th Cir. 2008). If so, the claim is barred unless the conviction has been reversed or declared invalid. *Heck*, 512 U.S. at 486; *Hainze v. Richards*, 207 F. 3d 795, 798 (5th Cir. 2000). While the Court in *Heck* dealt with constitutional claims under § 1983, state law claims that arise from the same "factual basis" as constitutional claims are subject to the same analysis under *Heck*. *Price v. City of Bossier*, 841 F. App'x 650, 654 (5th Cir. 2021). Further, "*Heck* applies to claims seeking declaratory and injunctive relief." *Ellis v. City of Dallas*, No. 17-3199, 2018 WL 5303299, at *2 (N.D. Tex.

10

Sept. 21, 2018), *report and recommendation adopted*, 2018 WL 5299575, at *1 (N.D. Tex. Oct. 25, 2018).  The *Heck* doctrine also applies without exception to misdemeanors and traffic offenses.  *Gates v. Strain*, 885 F. 3d 874, 883 (5th Cir. 2018), *cert. denied sub nom.*, *Gates v. Reed*, 139 S. Ct. 1171 (2019) (*Heck* applied to § 1983 case that asserted excessive force and bad faith prosecution claims related to pending misdemeanor charges of DWI and resisting arrest); *Nelson v. City of Burleson*, 265 F. 3d 1059, 2001 WL 8729800, at *1 (5th Cir. 2001) ("Nelson was attempting to challenge his traffic convictions by way of this § 1983 action for damages without having first had his convictions set aside by the Texas courts, which is prohibited by *Heck*.").

Part of Spann's *pro se* allegations, when broadly construed, challenges the probable cause for the traffic stop and the charges and traffic violations asserted against him.  To prove false arrest would require Spann to show that the officers lacked reasonable suspicion to stop the car and probable cause to thereafter issue the traffic citations and arrest him on the outstanding warrants. According to the undisputed evidence presented by defendants, on January 11, 2021, Spann entered pleas of guilty to several misdemeanor traffic offenses, including failure to signal a turn, expired motor vehicle inspection, and expired license plate.  Spann's claim that there was no probable cause to stop and arrest him for the concurrent traffic offenses and prior arrest warrant (which too was apparently related to traffic court) would be at direct odds with his pleas of guilty and convictions for some of those same violations.  *See Heck*, 512 U.S. at 487.

Furthermore, when a plaintiff's challenge to a charge "'is based solely on his assertions that he ... did nothing wrong,' that suit 'squarely challenges the factual determination that underlies his conviction' and is necessarily at odds with the conviction." *Aucoin v. Cupil*, 958 F. 3d 379, 383 (5th Cir. 2020) (citing *Walker v. Munsell*, 281 F. App'x 388, 390 (5th Cir. 2008). Since proving a lack of reasonable suspicion or probable cause would question the validity of Spann's traffic convictions, such claims are barred under *Heck*.

We also note that the fact that the dismissal of some of the initial charges against Spann does not alter the application of *Heck*. Probable cause for arrest applies to the arrest not each individual charge. *See Daigre v. City of Waveland, Miss.*, 549 F. App'x 283, 287 (5th Cir. 2013). The fact that Spann was not ultimately convicted of each of the traffic offenses or charges is immaterial to assessing the probable cause and the legality of the arrest. *Id*. ("If there was probable cause for any of the charges made ... then the arrest was supported by probable cause, and the claim for false arrest fails.") (citing *Wells v. Bonner*, 45 F. 3d 90 (5th Cir. 1995)). Therefore, a determination of the legality of his arrest (not the distinct charges) impacts the validity of the traffic offenses to which he pleaded guilty. *Heck* therefore bars his false arrest claim.

Spann's convictions based on his pleas of guilty have not been reversed or declared invalid, and cannot serve as the basis for his civil rights suit for false arrest. Therefore, defendants' motion is granted and Spann's claims of false arrest are dismissed with prejudice until

such time as the *Heck* conditions are met. *Johnson v. McElveen*, 101 F. 3d 423, 424 (5th Cir. 1996).

### E. Conspiracy and Retaliation Claims

Among other rights essential to freedom, the First Amendment protects "the right of the people ... to petition the Government for a redress of grievances." U.S. Const., Amend. 1. As the Supreme Court has noted, the right to petition the government is "a form of expression, and [persons] who invoke the Petition Clause in most cases could invoke as well the Speech Clause of the First Amendment." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 382 (2011). Broadly construing his *pro se* claims, Spann alleges that defendants and other unnamed police officers conspired to retaliate against him for exercising his First Amendment right to file his initial state court suit against the police department and Chief Bullen for violating his federal and state rights. The retaliation, he claims, was the arrival of officers at his mother's home on November 3, 2020, to harass and retaliate against him based on a fabricated domestic disturbance call.

To prove a § 1983 conspiracy, "the plaintiff must show that there was an agreement among the alleged co-conspirators to deprive him of his constitutional rights and that such an alleged deprivation actually occurred." *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019); *see also Shaw v. Villanueva*, 918 F. 3d 414, 419 (5th Cir. 2019) ("No deprivation, no § 1983 conspiracy."). "Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *Montgomery*, 759 F. App'x at 314 (citing *Arsenaux v. Roberts*, 726 F. 2d

13

1022, 1023–24 (5th Cir. 1982)).  The plaintiff "must show that the defendants agreed to commit an illegal act" intended to violate plaintiff's constitutional rights.  *Arsenaux*, 726 F. 2d at 1024.  Similarly, to prove a conspiracy under La. Civ. Code art. 2324, a plaintiff must prove that "(1) an agreement existed with one or more persons to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in plaintiff's injury; and (4) there was an agreement as to the intended outcome or result."  *Doe v. McKesson*, No. 17-30864, 2019 WL 6837921, at *4 (5th Cir. Dec. 16, 2019) (citing *Crutcher-Tufts Res., Inc. v. Tufts*, 992 So. 2d 1091, 1094 (La. App. 4th Cir. 2008), and La. Civ. Code art. 2324).

In this case, Spann has not presented any "facts tending to show a prior agreement ha[d] been made" between the defendants and/or any police officers to harass him, retaliate against him, or violate any right of Spann (or his mother) for filing a lawsuit after the car was impounded. *Arsenaux*, 726 F. 2d at 1024–25.  Rather, Spann uses the terms conspiracy and retaliation without providing more than conclusory allegations.  This is insufficient to survive a summary judgment.  Accordingly, summary judgment is granted on Spann's conspiracy claims against defendants under § 1983 and La. Civ. Code art. 2324.

Spann's retaliation claim fairs no better.  The framework used to govern retaliation claims by public employees under the First Amendment Free Speech Clause and the Petition Clause is the same.  *Harmon v. Dallas Cty., Tex.*, 294 F. Supp. 3d 548 (N.D. Tex. 2018), *aff'd*, 927 F. 3d 834 (5th Cir. 2019).  For a retaliation claim under the First Amendment, Spann must assert (1) he engaged in constitutionally protected activity,

14

(2) defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) defendants' adverse actions were substantially motivated to discourage plaintiff's exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F. 3d 252, 258 (5th Cir. 2002). Causation in a retaliation case requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F. 3d 299, 310 (5th Cir. 1997) (internal citations omitted). The plaintiff must show more than a mere belief he has been a victim of retaliation. *Id*. "[C]onclusory allegations of retaliation will not withstand a summary judgment challenge." *Woods v. Smith*, 60 F. 3d 1161, 1166 (5th Cir. 1995).

Spann alleges in his supplemental complaint that the November 3, 2020, visit by officers was in retaliation for his filing of the state court lawsuit, a protected act. However, Spann generally recognizes in his pleadings that the officers were present at his mother's home in response to a call regarding a disturbance. Defendants also provide police records regarding the call and dispatch to Gilda Spann's residence. This tends to establish that the officers visited the home on legitimate grounds and not to harass Spann or his mother.

Spann also fails to establish that he suffered an injury or damage as a result of the officers' brief appearance at his mother's home. He does not assert that any of the officers touched him, threatened him, or detained him. He does not allege that any of the officers made harassing remarks or any comments at all regarding the lawsuit. Instead, Spann claims merely that the officers' presence and donning of black

masks and gloves was intimidating. Defendants have asserted, however, that the black face masks and gloves were issued and worn as part of the police department's COVID-19 prevention protocol. Spann, therefore, has presented nothing that would establish a retaliatory motive or action to support his claim.

We also emphasize that Spann has not established that he was deterred from exercising a constitutional right or pursuing his lawsuit as a result of the November 3, 2020, incident. In fact, in response to the incident at his mother's home on November 3, 2020, Spann attempted to file a supplemental petition in the state court to assert the conspiracy and retaliation claims, something he ultimately was able to do in this court after removal. We warn however that disrespectful conduct towards citizens by any law enforcement officer, while not reaching the level of a constitutional violation, must be ferreted out and addressed, at least administratively by responsible supervisors. Similar repetitive conduct might have serious constitutional implications due to its cumulative impact.

For these reasons, defendants' motion for summary judgment is granted and Spann's claims of conspiracy and retaliation are dismissed with prejudice.

New Orleans, Louisiana this 23rd day of September, 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE